FILED
Jul 21, 2026
09:21 AM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | |
|---|---|
| Steven Henry,<br>            **Employee**,<br>**v.**<br>**CoreCivic of TN, LLC,**<br>**f/k/a CCA of Tennessee, LLC,**<br>            **Employer**,<br>**And**<br>**New Hampshire Insurance**<br>**Company,**<br>            **Carrier**. | Docket No. 2024-10-5229<br><br><br>State File No. 52744-2024<br><br><br>Judge Audrey Headrick |

---

## EXPEDITED HEARING ORDER

---

Mr. Henry asked that CoreCivic authorize a spinal cord stimulator and reinstate temporary disability benefits. CoreCivic denied the procedure for lack of medical necessity, and it denied temporary benefits because Mr. Henry reached maximum medical improvement.[1] For the reasons below, the Court orders CoreCivic to authorize the spinal cord stimulator but denies additional temporary benefits.

### Claim History

On January 26, 2023, Mr. Henry injured his neck after falling from a ladder. He received emergency treatment and was diagnosed with acute cervical radiculopathy.

In April, CoreCivic authorized Mr. Henry to see neurosurgeon Dr. Richard Lebow. Dr. Lebow diagnosed cervical radiculopathy and ordered physical therapy and diagnostic tests. He did not recommend surgery and referred Mr. Henry to pain

---

[1] CoreCivic also asserted that Mr. Henry sustained an intervening injury but acknowledged at the hearing that it lacked medical proof.

management.  On October 1, 2023, Dr. Lebow placed Mr. Henry at maximum medical improvement.

In November, Mr. Henry saw Dr. Moacir Schnapp, a panel-selected pain management physician.  He diagnosed neuropathic pain, explaining that the diagnosis "is unlikely to show up on any of the [diagnostic tests]."  Dr. Schnapp also diagnosed brachial plexus disorder and cervical radiculopathy.  He took Mr. Henry off work, prescribed pain medications, and ordered injections.

By April 2024, Dr. Schnapp recommended a psychological evaluation for a spinal cord stimulator trial.  Mr. Henry underwent the evaluation in June, and the evaluator described him as a good candidate for the procedure.

CoreCivic sent the recommendations to utilization review, which denied them.  The reviewing physician found the spinal cord stimulator was not medically necessary under the Official Disability Guidelines.  The Guidelines state that spinal cord stimulators "for neck and upper back conditions are not recommended as a first-line treatment option."  The reviewer also relied on the Guidelines statement that spinal cord stimulators offer "inclusive benefit, lack of benefit or potential harm."

Mr. Henry appealed the denial to the Bureau's medical director, who upheld it.  The medical director wrote that "[t]here is no FDA indication for, and no published [randomized controlled trial] on implanted spinal cord stimulator treatment of pain with no documented significant pathology."

In the interim, Mr. Henry started seeing Dr. Wyndham Bonett, a panel-selected pain management physician, in early 2025.  Dr. Bonett diagnosed cervical radiculopathy and dystonia.  He explained that cervical dystonia meant that the left side of Mr. Henry's neck muscles remained tense and prominent.  Dr. Bonett ordered injections and prescribed pain medications.

In June 2025, Dr. Bonett agreed with Dr. Schnapp's previous recommendation and ordered a trial spinal cord stimulator and psychological evaluation, since Mr. Henry had exhausted conservative treatment.

CoreCivic again sent the recommendation to utilization review.  The reviewing physician found the spinal cord stimulator was not medically necessary, stating that it is not recommended by the Guidelines for chronic neck pain "due to the narrow size of the epidural space with higher risk of spinal cord injury."  The reviewer noted no special circumstances justifying deviation from the Guidelines.

2

Mr. Henry again appealed the denial to the medical director, who again upheld it.

In February 2026, Dr. Bonett renewed his recommendation for a trial spinal cord stimulator and psychological evaluation, specifically requesting approval for a Saluda spinal cord stimulator.

CoreCivic sent the recommendation to utilization review. The reviewing physician found the spinal cord stimulator not medically necessary under the Guidelines, stating it is not recommended for chronic neck pain.

Mr. Henry appealed the denial to the medical director, who upheld it. The medical director explained, "[n]o psych eval despite normal MRI and failed ESIs" and "[n]o assessment for central sensitization despite now using 6 psychoactive meds."

Dr. Bonett, board-certified in anesthesiology and pain medicine, explained his recommendations at a later deposition. He testified that spinal cord stimulation helps with radicular and neuropathic pain. Mr. Henry exhausted conservative treatment and prescribing ongoing medication remains his only option if he does not receive a spinal cord stimulator. Radiculopathy and neuropathic pain diagnoses stem from examination and clinical diagnoses, but those conditions do not always appear on diagnostic tests. Further, he found Mr. Henry credible.

Dr. Bonett explained that Saluda is the newest spinal cord stimulator with "novel technology." Dr. Bonett anticipated Mr. Henry may be able to return to work and wean off all medications if he receives the Saluda stimulator. He admitted he lacks familiarity with the Guidelines and did not follow them.

Dr. Bonett said he still recommended that Mr. Henry undergo a psychological evaluation before receiving the stimulator. He disagreed with the utilization review denials, explaining that spinal cord stimulators help neuropathic and radicular pain.

Dr. Bonett consistently described Mr. Henry as "unfit to work." He treated Mr. Henry with the intention of improving his condition versus managing it.

Mr. Henry testified about the effects of the injury. He takes approximately nine pills daily, which causes drowsiness. He described having only two hours daily when he functions without severe pain. Mr. Henry wants the spinal cord stimulator because he wishes to enjoy time with his family and return to work.

CoreCivic attempted to impeach Mr. Henry with photos and a short video, all of which either he or his mother posted on social media, to show he lacks credibility. The photos showed Mr. Henry using an inflatable water slide, an airsoft gun, and his left hand while driving. The video showed Mr. Henry slip off the water slide onto the grass, landing on his bottom and then onto his left side.

### Findings of Fact and Conclusions of Law

Mr. Henry must present sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

First, the Court considers Mr. Henry's entitlement to the Saluda spinal cord stimulator. The procedure is presumed medically necessary, since an authorized treating physician recommended it. *Id.* § 50-6-204(a)(3)(H). To prevail, CoreCivic must rebut that presumption. Dr. Bonett did not specifically cite the Guidelines, so CoreCivic must only rebut the presumption by a preponderance of the evidence. *Morgan v. Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015).

Further, the Court is not bound by the determination of the utilization review physician or the medical director but must conduct a de novo review to determine whether CoreCivic rebutted the presumption. *Lusk v. Portopiccolo Group, LLC,* 2026 TN Wrk. Comp. App. Bd. LEXIS 8, at *12-13 (Feb. 20, 2026).

In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Id.* at *6.

After considering the relevant factors, the Court finds Dr. Bonett's opinion more persuasive than the opinions of the reviewing physicians and medical director.

Tennessee law states that the physician having greater contact with an injured employee has an advantage in giving a more in-depth, if not more accurate, opinion. *Bass v. Home Depot U.S.A., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *14 (May 26, 2017). Here, Mr. Henry saw Dr. Bonett for over a year, while the reviewing physicians and medical director never examined him.

Dr. Bonett testified that Mr. Henry exhausted conservative treatment and

4

explained his reasons for recommending the Saluda spinal cord stimulator. The reviewing physicians, on the other hand, performed record reviews and relied solely upon the treatment guidelines in denying the recommendations. Dr. Bonett disagreed with the reasoning given by the reviewers, and he stood by his recommendation that the stimulator is medically necessary.

These facts closely mirror those of *Lusk.* In that case, the authorized doctor recommending surgery was deposed and had examined the employee, unlike the utilization review physician. The authorized doctor in *Lusk* testified that conservative treatment had failed, "why he disagrees with the utilization review determination, and why, in his expert medical opinion, the . . . surgery is medically necessary." *Id.* at *12. The Court ordered the surgery, and the Appeals Board affirmed.

Here, the Court finds Dr, Bonett's opinion is more persuasive than those of the reviewing physicians. Although the reviewing physicians relied on the Guidelines, they are only recommendations; they are not a "standard" or "mandate." *Stephens v. Quality Private Care,* 2021 TN Wrk. Comp. App. Bd. LEXIS 20, at *13 (July 6, 2021).

Finally, like Dr. Bonett, the Court finds Mr. Henry credible. His testimony was calm, self-assured, confident, forthcoming, reasonable, and honest. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility). He accurately assessed the effects of his injury, and the Court observed Mr. Henry alternating between standing and sitting while visibly exhibiting pain symptoms. Further, the photos and video do not cast significant doubts upon his credibility because Mr. Henry openly posted them on social media and acknowledged he has two hours daily without severe pain.

In sum, the decisions of the reviewing physicians and medical director do not overcome the presumption that Dr. Bonett's recommendation is medically necessary. Therefore, the Court holds Mr. Henry is likely to prove at a hearing on the merits that he is entitled to the spinal cord stimulator.

Next, Mr. Henry asked for temporary total disability benefits. In October 2023, Dr. Lebow placed Mr. Henry at maximum medical improvement and referred him to pain management. Section 50-6-207(1)(E) states that an employee is presumed to be at maximum medical improvement if he is no longer treating and only receiving pain management. Therefore, the Court finds that Mr. Henry is unlikely to prevail at a hearing on the merits in his request for temporary benefits.

5

**IT IS, THEREFORE, ORDERED** as follows:

1. CoreCivic shall authorize the psychological evaluation and, if Mr. Henry is found to be a good candidate, shall authorize the Saluda spinal cord stimulator recommended by Dr. Bonett.

2. The Court denies Mr. Henry's request for temporary disability benefits at this time.

3. The parties shall appear for a Status Hearing on **Wednesday, September 23, 2026, at 2:30 p.m. Eastern Time/1:30 p.m. Central Time.** The parties must call 423-634-0164 or 855-383-0001 to participate. Failure to call might result in a determination of the issues without the party's participation.

4. Unless an interlocutory appeal of this Expedited Hearing Order is filed, compliance with this order must occur within seven business days of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED July 21, 2026.**


**JUDGE AUDREY HEADRICK**
**Court of Workers' Compensation Claims**

# APPENDIX

<u>Exhibits</u>:

1. Affidavit of Mr. Henry
2. July 31, 2024 letter signed by Drs. James B. Talmage and Robert B. Snyder
3. March 30, 2026 letter signed by Drs. Talmage and Snyder
4. Deposition of Dr. Bonett
5. Deposition of Mr. Henry
6. First Report of Work Injury
7. Wage Statement
8. Panel selecting Dr. Schnapp
9. Panel selecting Consultants in Pain Management, P.C.
10. Amended Joint filing of medical records
11. Waterslide photos
12. Waterslide video
13. Airsoft photos
14. Vehicle photos

# CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on July 21, 2026.

| Name | Email | Service sent to: |
|---|---|---|
| Monica Rejaei, Employee's Attorney | X | mrejaei@nstlaw.com bcooper@nstlaw.com |
| Vickie M. Cruzen, Employer's Attorney | X | vmoffettcruzen@shuttleworthwilliams.com |

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*